Year Investments, Inc., an Illinois Corporation, Plaintiff-Appellee, v. Thomas E. Joyce, Leo Palewich, Jr., and World Wide Brokerage Corporation, a Delaware Corporation, Defendants-Appellants.

Gen. No. 65–14.

Second District.
September 3, 1965.

Gordon Moffett, of Wheaton, and Burton Sherre, of Chicago, for appellants.

McDermott, Will & Emery, of Chicago (Hamilton Smith and Frank J. Uvena, of counsel), for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This is an appeal by the defendants, Thomas E. Joyce, Leo Palewich, Jr., and World Wide Brokerage Corporation, from an order of the Circuit Court of DuPage County after a trial without a jury.

The case appeared before this court on a previous occasion in 44 Ill App2d 367 (1964). Rehearing was denied, and thereafter leave to appeal was denied in the Supreme Court of Illinois.

In the previous case this court had affirmed a decision of the trial court holding the defendants guilty of conspiracy to defraud plaintiff of certain real estate and assessed plaintiff's damages in the amount of $17,165.79. In the previous case the trial court found that plaintiff and defendant Joyce had entered into a contract for the sale to Joyce of certain real estate known as the "Essig," "Jarnebro" and "Rossi" properties; that pursuant to the contract Joyce caused the defendant, World Wide Brokerage Corporation, of which he was president, to convey title to said property to the plaintiff; that after various negotiations with respect to the contract, L. J. Schaper, President of the plaintiff corporation, signed a deed in March of 1961 purporting to convey the said properties to the defendant World Wide Brokerage Corporation, and left the deed in the office of defendant Joyce and did not see the deed again until the case was begun in December of 1961; that at the time Schaper left the deed in Joyce's office it had been signed by Schaper and attested by the Secretary of the Corporation, but that it did not have any date on it, nor did it have the corporate seal of the Corporation, nor the acknowledgment on the reverse side; that at the time the deed was left by Schaper, he did not intend it to be effective to convey any titles; that thereafter Joyce ordered from Corporation Supply Company a corporate seal bearing the name "Year

175

Investments, Inc." and picked it up at the same date; that thereafter defendant Joyce, or a person or persons acting under his direction, caused the deed to be dated July 19, 1961, and the "bogus" seal of plaintiff purchased by defendant Joyce from the Corporation Supply Company to be affixed to the deed, and that the defendants caused the acknowledgment on the reverse side to be filled in and then recorded the deed; that these acts were committed pursuant to a wilful, wanton and malicious conspiracy between defendants to deprive the plaintiff by fraud of the titles to the said properties causing damage in the amount of $17,165.79. This court on that appeal found that the findings of the trial court "were amply supported by the evidence."

Upon the issuance of the mandate in this case, plaintiff filed a motion for the entry of an order directing the clerk of the court to sell the government bonds posted by defendants to secure the judgment pending the appeal, and to pay the judgment from the proceeds. On June 25, 1964, the defendants filed a motion to vacate the original judgment on the grounds of fraud and newly discovered evidence and for a new trial. A hearing was held before Judge O'Malley who heard the testimony of two witnesses, Kuzniar and Barclay. Kuzniar testified that he was employed by a firm which shared an office with defendant Joyce and others, and that on June 20, 1964 he went with Barclay to the office of a Mr. Bunge, and that he removed a corporate seal from a box with the name "Schaper" on it and made an impression of the seal on an issue of a daily paper; Defendants' Exhibit 1 was the paper on which the seal was originally impressed. Objection to the introduction of Exhibit 1 on the grounds of lack of foundation was sustained.

Barclay testified that he was a private investigator without a license and that he knew Joyce in trying

to secure financing for an apartment building and that he was employed by Joyce to conduct an investigation to determine the whereabouts of a corporate seal. He testified that in September, 1963, he went through a desk used by Schaper in Bunge's office and found a corporate seal in the bottom right-hand drawer, that he made an impression with the seal but threw it away. He further testified he revisited Bunge's office in March of 1964 and made another impression of the seal at that time as Defendants' Exhibit 2 for identification. Objection to that exhibit was also sustained. Barclay testified that he then returned to Bunge's office in early June of 1964 and found a seal in a cardboard box in an office which he believed was Schaper's. He returned on June 20th with Kuzniar who made the impression with it on a copy of the paper identified as Exhibit 1. It was further the testimony of Barclay that on four occasions he went to Bunge's office during business hours, that although he was not employed by Bunge, he was able to examine the contents of a desk or box without disturbance.

Plaintiff's witnesses were a Miss Bryant who was secretary to Bunge, who testified that she at no time saw a corporate seal in the box or in Schaper's desk. Schaper testified he never saw a corporate seal in his desk and that he did not see a seal in the box until shortly before he testified. He said that was the first time he saw the seal which he found in the box. On this testimony Judge O'Malley refused to set aside the decree but before a decree could be entered, Judge O'Malley died.

Thereafter a second hearing was held before Judge Atten and there was additional testimony of witness Brenner, an employee of the Corporation Supply Company, who said that company made the seal said to be found in Schaper's desk in a box. He compared

177

these impressions with one made in court with the seal produced by Schaper pursuant to subpoena and testified that the impressions on all the exhibits were made by the same seal, but in his opinion, he could not swear to it. On cross-examination he further stated that he was unable to testify that this seal made the impressions on the exhibits he had examined during direct examination, and on re-cross he admitted that when he stated it was his opinion that the seal made the impressions, that it was in effect his "best guess" and he could not testify that the seal did "in fact" make the impression. The trial Judge denied admission of the evidence as to the second seal as not being sufficiently or properly identified and denied the motion to vacate, from which order this appeal has been taken.

Defendant does not deny liability to the plaintiff in this appeal, but asks that the decree be modified on the issue of damages only. Defendants' theory is that a contract between the parties would limit the damages and that the finding of damages in the first case was based on a disregard of the contract as a basis for finding the damages because of the court's determination of fraud and conspiracy.

These issues are raised: Should the offered seal have been admitted into evidence on the basis of the expert witness, Brenner; and even if admitted, would it have warranted a modification of the original decree on the question of damages only.

A preliminary basis for the lower court's denial of defendants' motion was the failure of defendant Joyce and his attorneys to bring the so-called newly discovered evidence to the attention of the court at an earlier time. It is clear that the information was not brought to the attention of the court until after the mandate was filed and collection of a judgment sought

178

prior to the determination of the case by the court in the first appeal. This would go to the issues raised by appellees that the defendants' evidence is both incredible and barred by laches. The trial court, which was in the best position to determine the credibility of the various witnesses, clearly indicated its opinion that any reasonable person, if he had discovered a seal, would have brought it to light without delay.

██ Evidence which would have been vital to defendant in this case could certainly have been brought to the attention of the Appellate Court in some manner. Also, some effort might have been made to present this evidence to the trial Judge. Even if the trial court could not take legal note of the matter, such effort would have made the subsequent presentation of the so-called newly discovered evidence more credible. Under the following authorities, although this court cannot, in the exercise of its appellate jurisdiction, determine an issue not presented in the pleadings, yet it may consider the new evidence in determining whether that issue should be retried in the lower court. Caldwell v. Modern Woodmen of America, 90 Kan 175, 133 P 843 (1913). See also Devlin v. Surgent, 18 NJ 148, 113 A2d 9; Belofsky v. Johnson, 266 Ill App 351 (1932); Kerbs v. California Eastern Airways, Del Ch 83 A2d 473, 90 A2d 652; Meads v. Stott, 239 Pac2d 594.

██ The trial court could well have found that Barclay's story was inherently improbable. This, coupled with the fact that no mention was made of the alleged discoveries until nine months after the first finding, suggests that the entire testimony was of little probative value. It is clear that a judgment cannot be vacated on the ground of fraud until it is established by clear and convincing evidence. In the Matter of the Estate of Togneri, 296 Ill App

33, 15 NE2d 908 (1938); In Re: Burton Coal, 57 F Supp 361 (1944); Waterman v. Hall, 298 Ill 75, 131 NE 145.

■ To warrant the granting of a new trial on the ground of newly discovered evidence, it must appear that the evidence is such as will probably change the result if a new trial is granted. 39 Am Jur 165. This does not appear from this record.

■ In Staar v. Moy Tong Hoy, 177 Ill App 267 (1913), the court stated the rule that a litigant may not sit idly by and speculate on what the ruling of the court may be in a pending matter and afterwards be heard to insist that such order be set aside for reasons known to him but not brought to the attention of the court. Such conduct constitutes laches. See also Pyle v. Ferrell, 12 Ill2d 547, 147 NE2d 341 (1958).

■ As to the trial court's evaluation of witness Brenner's statements, this court considers Lyons v. Chicago City Ry. Co., 258 Ill 75, 101 NE 211, and Schwartz v. Peoples Gas Light & Coke Co., 35 Ill App2d 25, 181 NE2d 826, to be applicable. The court in Schwartz said that although an expert is permitted to state his opinion,

> ". . . the expert witness, no matter how skilled or experienced, will not be permitted to guess or state a judgment based on mere conjecture."

Brenner in the lower court stated that it was his best guess that the supposed bogus seal made the impression on defendants' exhibits and he could not testify that the seal did in fact make the impression. Later he said that it was his best judgment. The trial court then said that it is not a question of best guess or judgment, but it is a question of positive identification. We respect the findings of the trial judge in this case.

He saw and heard witness Brenner and was in the best position to evaluate the credibility of his testimony in relation to the exhibits and evidence presented.

Plaintiffs have argued that under any view of defendants' evidence, it does not entitle them to a new trial on plaintiff's damages in that defendants are again arguing a theory of damages denied to them in the previous appeal. Defendants argue that the original decree based damages on a fraud, or tort theory, and that if the offered evidence should stand, it would change the court's view on the fraud question; and in turn would relegate the question of damages to a question of contract. This, defendants say, has always been their position.

While the opinion in the prior appeal gave some support to defendants' view, the opinion also makes it clear that the question of the seal was not the sole basis for sustaining the trial court's finding as to damages and that there was "ample evidence from which the court could properly have determined the damages set forth in the decree."

██ This court reaffirms its position in the prior appeal, that the trial court having had the opportunity of viewing the witnesses and determining the facts from the conflicting evidence, it will neither substitute its judgment for the judgment of the trial court in its findings nor in its refusal to modify the decree. The evidence sought to be adduced as "newly discovered" probably would not change the result if a new trial were granted. Therefore, the earlier decision must stand and the judgment of the Trial Court in this appeal is affirmed.

Judgment affirmed.

MORAN and DAVIS, JJ., concur.