(No. 47476.–

WILLIAM E. SPAULDING *et al.*, Appellees, v. ILLINOIS COMMUNITY COLLEGE BOARD *et al.*, Appellants.

*Opinion filed Sept. 20, 1976.—Rehearing denied Nov. 12, 1976.*

KLUCZYNSKI, J., took no part.

William J. Scott, Attorney General, of Chicago (Patricia Rosen, Assistant Attorney General, of counsel), for appellants Illinois Community College Board *et al.*

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (R. Marlin Smith, Robert W. Sacoff, and Barbara Baran, of counsel), for appellant New Trier Township High School District No. 203.

Sidley & Austin, of Chicago (James E. S. Baker, and Roger H. Dusberger, of counsel), for appellees.

Ancel, Glink, Diamond & Murphy, of Chicago (Joseph A. Murphy, Craig J. Cobine, and Peter M. Rosenthal, of counsel), for *amicus curiae* Board of Trustees of Community College District No. 535 and Board of Trustees of Community College District No. 512.

James A. Rapp, of Hunter & Hutmacher, of Quincy, for *amicus curiae* John Wood Community College District No. 539.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiffs sued in the circuit court of Cook County for a declaratory judgment that section 6—6.1 of the Public Community College Act (Ill. Rev. Stat. 1973, ch. 122, par. 106—6.1) is either unconstitutional or, alternatively, must be construed as requiring a referendum on the involuntary establishment of a new community college district. Plaintiffs also sought to enjoin the Illinois Community College Board (hereinafter State Board) from taking any action to create, organize, or administer proposed Community College District No. 540. Plaintiffs are residents of areas which the State Board proposed to include when forming that district.

Under section 6—6.1 of the Act the State Board was authorized to either establish new community college districts or annex to an adjacent community college district "each parcel of territory within the state that is not a part of a community college district." In case of annexation the section provided for a "back door" referendum whereby the voters of the territory could petition for a referendum on the question of the annexation which the State Board had made. There was no provision for such a referendum as to new districts that were created by the State Board. In the trial court's opinion this difference was violative of equal protection, and on July 31, 1974, the court issued a temporary restraining order as prayed in the plaintiffs' complaint. On December 17, 1974, the court declared section 6—6.1 of the Act unconstitutional and permanently enjoined the State Board from taking further steps in the organization of the new district. The State Board appealed directly to this court under Rule 302(a) (50 Ill. 2d R. 302(a)). New Trier Township High School District No. 203 joined in the appeal, and *amicus curiae* briefs have been filed by Community College Districts Nos. 539, 535, and 512.

The plaintiffs now argue in this court that subsequent

to the taking of the appeal, section 6—6.1 of the Act was amended to provide for a referendum on the question of the creation of new community college districts. The new section provides for a referendum for new districts similar to the referendum that is provided in cases of annexations to existing districts. On December 31, 1975 (more than a year after the trial court's judgment involved in this appeal), under the provisions of the amended section the plaintiffs filed with the State Board a petition calling for a referendum on the establishment of District No. 540, which had been formed by the State Board under former section 6—6.1. On January 20, 1976, the State Board ordered that the referendum be held. On March 27, 1976, the residents of the proposed district voted overwhelmingly against the creation of the district.

The plaintiffs contend that through the referendum that has been held under this amendment they have achieved the relief that they originally sought, the dissolution of District No. 540. They contend that the issues are now moot and they have filed in this court a motion to dismiss the appeal. We deny the motion to dismiss the appeal as moot for the reasons subsequently stated.

Although the parties to this appeal refer to the new section 6—6.1 as an amended version of former section 6—6.1 we note that the former section was repealed outright without a saving clause by Public Act 79—708, effective September 3, 1975. The present section 6—6.1 was enacted as Public Act 79—1168, section 2 of which states:

> "Section 6—6.1 of the 'Public Community College Act', approved July 15, 1965, as amended, having been amended by Public Act 79—674 and repealed by Public Act 79—708, is reenacted as amended by Public Act 79—674 and is further amended as follows: ***."

Public Act 79—1168 was passed by the General Assembly on June 19, 1975. It was returned to the General Assembly by the Governor with an amendatory veto September 18, 1975. The General Assembly adopted

the Governor's suggested change on November 19, 1975, and the Governor certified the action of the General Assembly as conforming to his recommendation on December 18, 1975. Article IV, section 9(e), of the Constitution of 1970 provides that following an amendatory veto if the Governor certifies that the act of the General Assembly conforms to his recommendation the bill shall become law. It, therefore, appears that present section 6—6.1 is not an amended version of former section 6—6.1. It is a subsequent reenactment of the former section which had been repealed effective September 3, 1975. The new section did not become law until more than three months later.

The unusual sequence of the considerable amount of legislative activity in this area in 1975 raises numerous questions that have not been briefed or argued in this court and, having taken place almost a year after the notice of appeal was filed, were not presented to or considered by the trial court. We are at this time not prepared to hold that the provisions of new section 6—6.1 are applicable to District No. 540 or that the procedures followed in calling and holding the referendum under the new section were valid. These and other questions arising from the repeal and reenactment of this section should be presented to the trial court for its consideration.

We also consider that declaration that the referendum renders moot the issues in this case may be *res judicata* as to certain issues and prejudice the rights of parties to this appeal in other litigation which we have been informed by the briefs is now pending. The other litigation also involves the validity of the establishment of District No. 540. See *Bankers Life and Casualty Co. v. City of Chicago,* 21 Ill. 2d 174.

Also, the John Wood Community College District No. 539, which has filed an *amicus* brief, was organized under the 1973 version of section 6—6.1 of the Act. The district serves a five-county area in west central Illinois and is fully

operational. No referendum was held on the creation of that district since none of the residents of the proposed districts sought one and under the section as it then existed no referendum was required or authorized. While the legality of District No. 539 is not squarely before us, the finding by the trial court in this case of unconstitutionality of the section under which that district was organized may have cast a cloud over the validity of that district. We, therefore, consider the question of the constitutionality of the original section 6—6.1 to be of significant interest to the public. (See Annot., 132 A.L.R. 1185 (1941).) For these reasons we deny plaintiff's motion to dismiss this appeal as moot.

The primary issue in this appeal is whether former section 6—6.1 of the Public Community College Act (Ill. Rev. Stat. 1973, ch. 122, par. 106—6.1) deprived the plaintiffs of equal protection of the law. This section was added to the Act in 1972 and, as originally proposed, it made no provision for referenda on the questions of either the creation of new districts or the annexation of nondistrict property to existing districts. The Governor, however, exercised his amendatory veto power. Language was added to the section which provided for a referendum on the question of annexation but made no provision for a referendum on the question of the creation of a new district. It is this alleged discrimination which plaintiffs contend and the trial court held violates the equal protection clauses of the State and Federal constitutions.

The plaintiffs contend that the failure to provide for a referendum in the organization of District No. 540 constituted the denial of a fundamental right, the right to vote. They therefore argue that the different procedure provided by the section for annexations from that provided for the formation of new districts must be in furtherance of a compelling State interest. See *Kramer v. Union Free School District No. 15,* 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886.

This court has held that under section 1 of article VIII of the Illinois Constitution of 1870, the legislature possessed all power to legislate in reference to public school matters. No resident of a school district had an inherent right of franchise insofar as school elections were concerned. His right to vote was purely a permissive one bestowed by the legislature. (*Latham v. Board of Education,* 31 Ill. 2d 178, 186; *People v. Deatherage,* 401 Ill. 25.) Under section 1 of article X of the 1970 Illinois Constitution the legislature possesses similar authority concerning school matters. Under the decisions of this court it is clear that the State's interest in education is so pervasive that it may constitutionally establish or alter school districts without any local referendum. (*People v. Francis,* 40 Ill. 2d 204, 212; *People ex rel. McLain v. Gardner,* 408 Ill. 228; *People v. Deatherage,* 401 Ill. 25.) The Act conferred upon one class, residents of territory annexed to existing school districts, the right to have a referendum. It applied uniformly to all members of that class. It did not confer the right to vote on some otherwise qualified voters and deny it to others. All qualified voters who resided in the territory annexed to an existing district had a right to vote at a referendum. All qualified voters who resided in territory formed into a new school district were denied the right to vote at a referendum. The plaintiffs' reliance upon *Kramer v. Union Free School District No. 15* is misplaced. The plaintiffs have not been deprived of a fundamental right.

The equal protection question therefore is whether there exists a rational basis for granting the right to a referendum in a case involving annexation of non-college-district territory to an existing community college district and withholding the right to a referendum in a case involving the formation of a new community college district from non-college-district territory. When considering the validity of legislative classification there exists the presumption that the legislature acted conscientiously, and

we will not interfere with the judgment "except where the classification is clearly unreasonable and palpably arbitrary." *Latham v. Board of Education,* 31 Ill. 2d 178, 182.

There are substantially different problems involved in the organization of a new community college district that are not present in the annexation of territory to an existing district. Problems totally unrelated to the need for or desirability of a community college district could bring about the defeat of the organization of a new district through a back door referendum which would not be critical issues in an annexation referendum. An ancillary question such as the location of the educational facilities can easily become a controlling factor in causing the defeat by way of a referendum of an otherwise desirable and needed community college district. Real or imagined dominance of the board of trustees of a new district by a geographic area or a distrusted faction could bring about a similar result. The legislature in its wisdom may have considered these and other differences sufficient to warrant the classification for the purpose of different treatment. We will not pass on the wisdom of this classification. As long as these substantial differences exist and bear a rational relationship to the subject of the legislation, the classification is not violative of equal protection. (*Beck v. Buena Park Hotel Corp.,* 30 Ill. 2d 343, 346.) The trial court erred in holding former section 6—6.1 of the Public Community College Act unconstitutional.

New Trier Township High School contends in this appeal that new section 6—6.1 does not apply to District No. 540. Former section 6—6.1 provided that new districts organized under that section became effective by operation of law on August 1, 1974. New Trier argues that all steps had been taken necessary to establish District No. 540 prior to the issuance of the temporary restraining order on July 31, 1974, enjoining the State Board from taking any further steps to "create, organize or administer" the new district. It therefore contends that on

August 1, 1974, by operation of law District No. 540 was organized. Thereafter, new section 6—6.1 was enacted and contained a saving clause which provided:

> "Nothing in this act shall be construed to affect new districts duly organized under this Section prior to September 3, 1975." (Pub. Act 79—1168.)

Since New Trier contends that District No. 540 was organized under the prior section on August 1, 1974, it argues that the saving clause of the new section makes its referendum provision inapplicable to District No. 540.

This issue also arose as a result of the reenactment of section 6—6.1 subsequent to the taking of the appeal to this court. As is true with the other issues that were raised by the reenactment, this question involves more than just the interpretation of the language of the reenacted section. Whether the new referendum provision does or does not apply to District No. 540 depends upon more than the meaning of the word "organized" used in the saving clause.

The judgment of the circuit court of Cook County holding former section 6—6.1 of the Public Community College Act unconstitutional is reversed and the injunction is vacated. The cause is remanded to the circuit court of Cook County for further proceedings not inconsistent with the views expressed herein.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.