

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2007

# Galati v. Commerce Bancorp Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5157

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Galati v. Commerce Bancorp Inc" (2007). *2007 Decisions.* Paper 1408.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1408

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-5157

———

MARY ANN GALATI, Individually and on behalf of all other similarly situated;
E. MILES SENN; ROSTISLAV SEMERAN; SHELBY GOLDGRAB; ROBERT
MORRISON; and JIMMY GROSSMAN

v.

COMMERCE BANCORP, INC.; VERNON W. HILL, II; RONALD A. WHITE;
DOUGLAS J. PAULS; GLEN K. HOLCK; STEPHEN M. UMBRELL; GEORGE E.
NORCROSS, III
(D.C. No. 04-cv-03252)

ROSTISLAV SEMERAN, Individually and on behalf of all others similarly situated

v.

COMMERCE BANCORP, INC.; VERNON W. HILL, II; RONALD A. WHITE;
DOUGLAS J. PAULS; GLENN K. HOLCK; STEPHEN M. UNBRELL
(D.C. No. 04-cv-03465)

SHELBY GOLDGRAB, Individually and on behalf of all others similarly situated

v.

COMMERCE BANCORP, INC.; VERNON W. HILL, II; RONALD A. WHITE;
DOUGLAS J. PAULS; GLENN K. HOLCK; STEPHEN M. UNBRELL
(D.C. No. 04-cv-03576)

ROBERT MORRISON, Individually and on behalf of all others similarly situated

v.

COMMERCE BANCORP, INC.; VERNON W. HILL, II
(D.C. No. 04-cv-03631)

JIMMY GROSSMAN, Individually and on behalf of all others similarly situated

v.

COMMERCE BANCORP, INC.; VERNON W. HILL, II
(D.C. No. 04-cv-05191)

E. MILES SENN, Individually and on behalf of all others similarly situated

v.

COMMERCE BANCORP, INC.; VERNON W. HILL, II; RONALD A. WHITE;
DOUGLAS J. PAULS; GLEN K. HOLCK; STEPHEN M. UNBRELL
(D.C. No. 04-cv-04113)

Mary Ann Galati; E. Miles Senn;
Rostislav Semeran; Shelby Goldgrab;
Robert Morrison; Jimmy Grossman,

Appellants

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 04-3252, 04-3465, 04-3576, 04-3631, 04-4113, 04-5191)
District Judge: Honorable Robert B. Kugler

———

Submitted Under Third Circuit LAR 34.1(a),
December 12, 2006

Before: FUENTES and VAN ANTWERPEN, <u>Circuit Judges</u>, and PADOVA,[*] <u>District Judge</u>

(Filed: March 29, 2007)

---

[*] The Honorable John R. Padova, United States District Judge, Eastern District of Pennsylvania, sitting by designation.

2

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Plaintiffs in this securities class action purchased stock in Commerce Bancorp, Inc. ("Commerce Bank" or the "Company") during the period from June 1, 2002 through June 28, 2004. They assert claims against Commerce Bank, three of Commerce Bank's current and/or former officers, and three former officers of Commerce Bank's subsidiary, Commerce Bank/Philadelphia, for violation of § 10(b) of the Securities and Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, for failure to disclose bid-rigging and other unlawful practices allegedly committed on behalf of the Company between April 2002 and November 2003.[1] This is an appeal from the District Court's Rule 12(b)(6) dismissal of plaintiffs' consolidated amended complaint. We agree with the District Court that plaintiffs fail to state a claim upon which relief can be granted.[2] Therefore, we will affirm.

---

[1] In the proceedings below, plaintiffs also asserted, and the District Court rejected, a claim pursuant to § 20(a) of the 1934 Act, 15 U.S.C. § 78t, for control person liability. Since plaintiffs do not discuss their § 20(a) claim in their briefs on appeal, we assume they are not challenging the District Court's ruling on this issue.

[2] We exercise plenary review over a district court's dismissal of a complaint pursuant to Rule 12(b)(6). Oran v. Stafford, 226 F.3d 275, 281 n.2 (3d Cir. 2000). We must accept as true the factual allegations contained in the complaint, and may affirm the

3

## I. Background

On June 29, 2004, federal authorities announced the criminal indictment of three officers of Commerce Bank/Philadelphia—Ronald A. White, Glenn K. Holck, and Stephen M. Umbrell—for their participation in a "pay-to-play scheme" involving then Philadelphia Treasurer, Corey Kemp.[3]  White, Holck, and Umbrell allegedly assisted Kemp in obtaining a number of personal loans for which he was not financially qualified and, in exchange, Kemp channeled municipal business to Commerce Bank/Philadelphia, including a $1.5 million municipal account, $50 million in municipal deposits, and priority in several municipal bond deals.[4]

In the wake of the public announcement of the criminal indictment, the value of Commerce Bank's stock declined, including a sixteen percent drop, from $64.98 to $54.44, in the two days immediately following the announcement.  Subsequently, six separate class action lawsuits were filed by Commerce Bank shareholders against White, Holck, and Umbrell, alleging violations of the federal securities laws.  Although neither Commerce Bank, the parent corporation, nor any of Commerce Bank's officers, were charged with criminal conduct at the time the initial complaints were filed, the Company,

---

dismissal only if it appears certain that plaintiffs can prove no set of facts that would entitle them to relief.  Shapiro v. UJB Fin. Corp., 964 F.2d 272, 279-280 (3d Cir. 1992).

[3] During the relevant time period, White, Holck, and Umbrell respectively served as Director, President, and Regional Vice-President of Commerce Bank/Philadelphia.

[4] According to plaintiffs, since the commencement of this lawsuit, Holck and Umbrell have been convicted on fraud and corruption charges.

along with its Chief Executive Officer and Chairman, Vernon W. Hill, II; its Director, George E. Norcross, III;[5] and its Chief Financial Officer, Douglas J. Pauls, were also named as defendants, based on allegations that they had actual knowledge of the bid-rigging scheme.

The District Court subsequently consolidated the six class actions and, on January 24, 2005, plaintiffs filed a consolidated amended complaint. Defendants thereafter moved for dismissal pursuant to Rule 12(b)(6), and the District Court granted the motion. This appeal followed.

## II.    Discussion

"Section 10(b) prohibits the 'use or employ, in connection with the purchase or sale of any security, . . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . .'" In re Ikon Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (quoting 15 U.S.C. § 78j(b)). "Section 10(b) is enforced through Rule 10b-5, which creates a private cause of action for investors harmed by false or misleading statements." In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004). Thus, Rule 10b-5 "makes it unlawful for any person '[t]o make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made in light of the circumstances under which they were made, not misleading . . . .'" In re Ikon, 277 F.3d at 666 (quoting 17 C.F.R. §

_____

[5]Norcross was not added as a defendant until plaintiffs filed their consolidated amended complaint.

5

240.10b-5(b)).

To state a claim under §10(b) and Rule 10b-5, a private plaintiff must plead the following elements: (1) that the defendant made a misrepresentation or omission of (2) a material (3) fact; (4) that defendant acted with knowledge or recklessness; and (5) that the plaintiff reasonably relied on the misrepresentation or omission and (6) consequently suffered damages. In re Advanta Corp. Sec. Litig., 180 F.3d 525, 537 (3d Cir. 1999) (quotation marks omitted). In addition, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, et seq., also imposes special pleading requirements for Rule 10b-5 claims. See In re Alpharma, 373 F.3d at 147. For example, the complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1)(B). Federal Rule of Civil Procedure 9(b) sets forth additional pleading requirements, providing, in relevant part, that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

In this case, the District Court found that even though information concerning the conduct of White, Holck, and Umbrell would be material to investors, defendants did not have a duty under Rule 10b-5 to disclose the information. We agree.

"Material information is information that would be important to a reasonable investor in making his or her investment decision." Oran, 226 F.3d at 282 (quotation marks omitted). "[U]ndisclosed information is considered material if there is a substantial likelihood that the disclosure would be viewed by the reasonable investor as having

6

significantly altered the total mix of information available to that investor." Id. (quotation marks omitted).

At the same time, non-disclosure of material information "will not give rise to liability under Rule 10b-5 unless the defendant had an affirmative duty to disclose that information." Id. at 285. As the Supreme Court has stated: "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic v. Levinson, 485 U.S. 224, 239 n.17 (1988). "[A] duty to disclose may arise when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure." Oran, 226 F.3d at 285-86.

Here, plaintiffs allege that "[d]efendants made several statements that were rendered false and misleading by virtue of their failure to speak fully and accurately about the illegal bid-rigging and kick-back scheme." (Appellant's Br. at 13.) Specifically, plaintiffs point to various statements made in Commerce Bank's 2002 through 2004 SEC filings and earnings releases, including the following:

- "dramatic deposit growth continues with total deposits at September 30, 2002 of $13.9 billion, a $4.5 billion increase or 47% over total deposits of $9.4 billion a year ago"

- "ending government deposits grew to $1,595 million from $1,212 million the previous year"

- "The strong performance of [Commerce Capital Markets] was led by the public finance division."

- "the unique Commerce business model continues to produce strong top-line revenue growth driven by strong deposit growth which significantly increases our net interest income and net income"

7

- "dramatic deposit growth continues with total deposits at September 30, 2003 of $19.6 billion, a $5.7 billion increase or 41% over total deposits of $13.9 billion a year ago"

(Appellant's Br. at 7-8.)  Plaintiffs contend that "[o]ther filings throughout 2002, 2003 and 2004 likewise contained statements about Commerce Bank's 'dramatic growth' in its deposit base and investment banking fees."[6]  (Id. at 8.)

As plaintiffs state in their consolidated amended complaint, "[w]hen the defendants chose to make positive statements about growth in Commerce Bank's government and public deposits, they had a duty to tell the whole truth about the unsustainable and illegal manner in which many, if not most, of those deposits were procured."  (App. at 320.)  Like the District Court, we do not agree.

"Factual recitations of past earnings, so long as they are accurate, do not create liability under Section 10(b)."  In re Advanta, 180 F.3d at 538.   Moreover, statements concerning the Company's "dramatic deposit growth," "strong performance," and "unique business model," constitute nothing more than mere "puffery," insufficient to

_____

[6] The SEC filings were signed by defendants Hill and Pauls.  In its opinion, the District Court noted that plaintiffs' failure to attribute any allegedly misleading statements to the other defendants was likely fatal to their claim against those defendants.  The District Court went on to conclude, however, that "because this Court finds that none of the alleged statements were in fact materially misleading, the Court will dismiss the consolidated complaint in its entirety without addressing Plaintiffs' failure to plead violations by particular Defendants."  In addition, the District Court strongly suggested that plaintiffs' failure to explain in their complaint why the statements were misleading was likely insufficient to satisfy the heightened pleading standards of the PSLRA and Rule 9(b).  (App. at 9-11.)

8

sustain a Rule 10b-5 claim.  See id. at 538-39.  Indeed, none of the statements recited by plaintiffs "put into play" the integrity of Commerce Bank's practices with respect to government deposits.  Compare Shapiro, 964 F.2d at 282 ("where a defendant affirmatively characterizes management practices as 'adequate,' 'conservative,' 'cautious,' and the like, the subject is 'in play'" for purposes of Rule 10b-5).  Rather, as the District Court concluded, the statements were routine recitations of past financial performance, and general optimistic statements about the Company's future growth that, in and of themselves, did not give rise to a duty to disclose the malfeasance of three senior officers employed by the Company's subsidiary.  Therefore, while we recognize that investors may very well have an interest in knowing about such misconduct, we agree with the District Court that plaintiffs' failure to identify a single statement that was rendered misleading by defendants' non-disclosure is fatal to their Rule 10b-5 claim.[7]

Finally, with respect to plaintiffs' claim that the District Court abused its discretion in dismissing the consolidated amended complaint without granting plaintiffs leave to amend the complaint, defendants point out that plaintiffs never moved before the District Court for leave to file an amended complaint, nor did they ever submit to the District Court a proposed amended complaint.  Rather, according to defendants, "all that Plaintiffs

---

[7] We are also unpersuaded by plaintiffs' argument that the District Court engaged in improper factfinding when it concluded that the "attendant risks" of the bid-rigging scheme were too speculative to be material for purposes of Rule 10b-5.  See In re Craftmatic Sec. Litig., 890 F.2d 628, 641, 644 (3d Cir. 1990) (finding that the risks associated with deceptive and illegal advertising and marketing program were sufficiently speculative and unreliable to be immaterial as a matter of law).

9

did to request leave to amend was to insert a footnote at the end of the last sentence of their Brief in Opposition to Commerce Defendants' Motion to Dismiss." (Commerce Bancorp Br. at 34.)

In their briefs on appeal, plaintiffs assert that they did in fact move for leave to amend, but fail to point to anything in the record to support their contention. Therefore, we conclude that the District Court's dismissal of the complaint with prejudice was not an abuse of discretion. See Ramsgate Court Townhome Ass'n v. West Chester Borough, 313 F.3d 157, 161 (3d Cir. 2002) ("Because a motion for leave to amend was never properly before it, the district court did not abuse its discretion in failing to address [plaintiff's] request for leave to cure deficiencies in her pleadings.")

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's dismissal of plaintiffs' consolidated amended complaint.

———