BLD-005                                                        **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3229
_____

KARIM FARUQ,
                                        Appellant

v.

MARY MCCOLLUM, Case Manager, F.C.I. Fort Dix;
D. SCHAAFF, Unit Manager, F.C.I. Fort Dix
ROBERT DONAHUE, CMC, F.C.I. Fort Dix

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:11-cv-05987)
District Judge: Honorable Jerome B. Simandle

_____

Submitted for Possible Dismissal Due to a Jurisdictional Defect or
Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 10, 2013
Before:  AMBRO, CHAGARES and VANASKIE, Circuit Judges

(Opinion filed: October 18, 2013 )
_____

OPINION
_____

PER CURIAM

        Karim Faruq appeals pro se from the District Court's order dismissing his

complaint.  For the following reasons, we will summarily affirm.

I.

Faruq, a federal prisoner, filed a complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Mary McCollum, a case manager at the prison; David Schaaff, a unit manager at the prison; and Robert Donahue, the prison's case manager coordinator. According to Faruq, he submitted transfer requests to the defendants in December 2009 under BOP Program Statement 5100.08 and 18 U.S.C. § 3621(b), when he realized that he had become eligible for transfer to a minimum security facility. At the time, his custody classification was moderate severity. In response, Defendant Schaaff allegedly instructed Defendant McCollum to process the transfer. Several months later Defendant McCollum reviewed Faruq's file, including prior custody classification reviews, to determine his appropriateness for transfer and allegedly questioned him about his reasons for complaining to her superiors. Thereafter, Defendant McCollum raised Faruq's custody classification from moderate severity to the greatest severity and, as a result, prevented him from transferring to a minimum security camp. Faruq challenged the increase, explaining to the defendants, to no avail, that he was merely a "wholesaler," not an organizer or leader in the drug organization, and thus did not qualify for the increased custody classification. Faruq claimed that Defendant McCollum's actions amounted to discrimination on the basis of race and religion. He alleged further that after he informed Defendants Schaaff and Donahue of his intent to file a grievance and wrote to his U.S. Senator and congressional representative, the defendants retaliated against him.

The District Court screened Faruq's original and amended complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2), and dismissed both without prejudice for failure to state a viable equal protection and retaliation claim. Thereafter, Faruq filed a motion to reopen the case and to file a second amended complaint, this time naming two other inmates who allegedly were similarly situated to him but received more favorable treatment. In particular, he claimed that the defendants transferred one inmate—Winestock—to a minimum security camp despite the fact that he had been convicted for possessing significantly more drugs than Faruq and had received a sentence enhancement for his leadership role in a drug organization. Faruq claimed the defendants did the same with another inmate—McKubbin—who, having arrived at Fort Dix with the greatest severity custody classification for his role as a organizer/leader in a drug organization, was ultimately deemed a "supervisor" instead of an organizer/leader. The District Court granted Faruq's motion to reopen but dismissed his second amended complaint without prejudice because he failed to allege that his custody level was increased for any reason other than his criminal history, that he was similarly situated to the other inmates, and that the other inmates received more favorable treatment. This timely appeal followed.

II.

We have jurisdiction under 28 U.S.C. § 1291,[1] and we exercise plenary review over the District Court's order dismissing Faruq's complaint. See Gelman v. State Farm

---

[1] Generally, an order dismissing a complaint without prejudice is not final within the meaning of 28 U.S.C. § 1291 unless the litigant cannot cure the defect or intends to stand on the complaint. See Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976) (per curiam). Here, the District Court did indeed dismiss the complaint without

3

Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).  To survive dismissal, the complaint needed to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  We may summarily affirm if the appeal does not present a substantial question, see I.O.P. 10.6; see also Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

In dismissing Faruq's second amended complaint, the District Court took judicial notice of his earlier habeas action,[2] incorporating the record from it for the purpose of reviewing the claims raised here,[3] and concluded that Faruq failed to allege that his increased custody classification was the result of either an equal protection violation or retaliation.  For substantially the reasons given, we agree with this conclusion.

To state a claim for race- or religion-based discrimination, Faruq needed to show specifically that he received different treatment from that received by other similarly

prejudice, but it did not expressly grant leave to amend.  Instead, unlike its October 18, 2012 order dismissing Faruq's original and amended complaint, the District Court ordered the clerk to close the case.  See Garber v. Lego, et al., 11 F.3d 1197, 1198 n.1 (3d Cir. 1993).  Nothing in the District Court's opinion or order anticipates the continuation of the action further, and Faruq appealed rather than seeking to amend yet again.  Accordingly, we deem the District Court order final and appealable.

[2] Faruq challenged the BOP's denial of his transfer request, arguing for a lower custody classification.  The District Court dismissed the petition, though, for lack of jurisdiction.  See Faruq v. Zickefoose, No. 10-cv-6768, 2011 WL 4625358 (D.N.J. Oct. 3, 2011).

[3] Although District Courts are generally limited to considering only the allegations in the complaint at the dismissal stage, the District Court here was permitted to consider the record from Faruq's earlier habeas case.  See City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998) (explaining the public-records exception to the general rule of conversion).

situated inmates. See Williams v. Morton, 343 F.3d 212, 221 (3d Cir. 2003). In his second amended complaint, Faruq pointed to inmates Winestock and McKubbin who he alleged were similarly situated but received lower custody classification for camp placement. As Faruq admitted, though, Winestock was not similarly situated. Winestock's custody classification was lowered from greatest severity to moderate at the same time that Faruq's was lowered, but, unlike Faruq, Winestock's classification was never again raised. (See Pl.'s Second Am. Compl., at 6; Br. in Supp. of Appeal, at 2.) Winestock was therefore eligible for a transfer. Besides, as Faruq also admitted, Winestock is not in a minimum security camp. (See Pl.'s Second Am. Compl., at 6.) And McKubbin was not treated more favorably than Faruq; like Faruq, McKubbin's custody classification was increased to greatest severity and he was ultimately denied camp placement. (See id. Ex. 1.)

At bottom, Faruq failed to allege that the defendants acted with discriminatory intent or purpose. See City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 194-95 (2003). Although Faruq claimed that his race and religion were the reasons that Defendant McCollum increased his custody classification from moderate severity to the greatest severity, he conceded that the defendants had a rational reason for it; his custody classification was increased because of his purported role as a leader and organizer of a drug organization, which, in accordance with the BOP's Program Statement 5100.08, negated a lower custody classification. (See Pl.'s Second Am. Compl. Ex. 3.); see also Ramsgate Court Townhome Ass'n v. West Chester

5

Borough, 313 F.3d 157, 160 (3d Cir. 2002) (requiring a plaintiff to negate every conceivable rational basis for his differential treatment).

For the reasons discussed above, Faruq also failed to allege that the defendants increased his custody classification in retaliation for filing grievances requesting a transfer and sending letters to his senator and congressional representative. In particular, he failed to allege a causal link between his complaints and the defendants' actions. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) ("A prisoner alleging retaliation must show that (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."). Foremost, as the District Court explained in dismissing the original and first amended complaint, Faruq's custody classification was increased before he ever filed his administrative remedy and contacted his representatives. Moreover, as noted above, the increase resulted from Defendant McCollum's review of Faruq's file to determine the appropriateness of a transfer—the transfer that Faruq had requested.

For the reasons given, the District Court properly dismissed Faruq's second amended complaint. Accordingly, we will summarily affirm the judgment of the District Court. Murray v. Bledsoe, 650 F.3d 246, 248 (3d Cir. 2011) (per curiam); see also 3d Cir. L.A.R.; I.O.P. 10.6.

6